Belford BARNETT, Plaintiff,

v.

PENNSYLVANIA–READING SEA-
SHORE LINES, Respondent.

Civ. No. 368–55.

United States District Court
D. New Jersey.

Sept. 19, 1956.

Powell & Davis, by James M. Davis, Jr., Mount Holly, N. J., for plaintiff.

Richards, Capehart, Smith & Wood, by Blaine E. Capehart, Camden, N. J., for respondent.

MADDEN, District Judge.

This is an action wherein the plaintiff, Belford Barnett, has filed a supplemental petition seeking an order reinstating him to his position as an employee with the defendant, Pennsylvania-Reading Seashore Lines, together with compensation for loss of work.

The supplemental petition alleges that plaintiff has been a railroad employee since 1906 and an employee of defendant since its incorporation (sometime prior to 1935), that in July, 1935 while in employ of defendant he was injured, that he instituted suit in the Courts of the State of New Jersey for his injuries. He alleges that during the pendency of his suit the defendant-company offered him different employment for the remainder of his natural life, if he would forego his damage claim which he further alleges he did. (While this allegation appears in the complaint the record before the National Railroad Adjustment Board which both parties use and refer to as part of this motion, discloses that the suit instituted March 25, 1936 was dismissed for failure to establish negligence on the part of the Railroad.)

Petitioner further alleges that after he had returned to work under the alleged agreement that he was unlawfully dismissed from service upon an improperly alleged sight defect when in truth and in fact he was physically able and competent to perform his duties. The Petition then alleges:

9. The petitioner has exhausted his remedies in the respondent's tribunals and in the National Railroad Adjustment Board, and has recovered nothing. A copy of the "award" of the National Railroad Adjustment Board, Division I, sought to be "enforced" hereby, is attached hereto as Exhibit "A".

10. This court has jurisdiction by virtue of 45 U.S.C.A. § 153, First (p).

This citation by petitioner is the Railway Labor Act, and further on the petition alleges jurisdiction in the Court under 28 U.S.C.A. § 2201, the Declaratory Judgments Act, although both respondent and petitioner are citizens of New Jersey for the purpose of this suit and no diversity exists and counsel in his argument has not pointed out how the Court would have jurisdiction under this Act. Petitioner thereupon prays for relief.

When the action was first commenced in this Court the respondent-railroad moved to dismiss upon the ground that petitioner's exclusive remedy rested with the National Railroad Adjustment Board. In the brief and argument of counsel for petitioner, he raised the constitutionality of the Act in that it deprived the petitioner of common law trial of his alleged cause of action. The Court, thereupon, suggested a supplemental pleading alleging the unconstitutionality of the Act so that notice under the Statute[1] could be given by the Court to the Attorney General of the United States. Counsel has filed such supplemental petition and the Court has notified the Attorney General in compliance with the Statute. The Attorney General's office, after review of the pleadings, notified the Court that the United States would not intervene as a party in the action. The matter then proceeded to argument.

Section 153 of the Railway Labor Act, 45 U.S.C.A. § 153, establishes the National Railroad Adjustment Board and its divisions and function. Subparagraph (m) provides, as follows:

"The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, *and the awards shall be final and binding upon both parties to the dispute,* except insofar as they shall contain a money award. In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute." (Emphasis supplied.)

Subparagraph (p) upon which the petitioner alleges jurisdiction in this Court provides, as follows:

"If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, and except that the petitioner · shall not be liable for costs in the district court nor for

1. 28 U.S.C.A. § 2403.

costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board."

The record of the Board presented here for consideration on this motion discloses that the award was against the petitioner herein.

In the matter of Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, Moore a former employee brought suit, not as the petitioner here has done for reinstatement with incidental damages, but solely for damages for wrongful discharge in violation of a written contract between the Railroad and the Brotherhood. The Supreme Court held that all he was seeking was money damages for the common law breach of contract and that he did not have to go to the Railroad Adjustment Board.

In 1950 the Supreme Court reviewed its decision in the Moore case, supra, in the matter of Slocum v. Delaware, Lackawanna & Western Railroad Co., 339 U.S. 239, at page 244, 70 S.Ct. 577, at page 580, 94 L.Ed. 795, and said:

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees."

The petitioner here argues that despite the language of the Supreme Court and the Act itself that the National Railroad Adjustment Board does not have exclusive jurisdiction and for this Court to so interpret the Act would make the statute unconstitutional as contravening the Judicial Article, art. 3, and the Fifth Amendment of the Constitution respectively.

In reviewing the method of operation by the National Railroad Adjustment Board, Judge Goodrich, speaking for this Circuit said, in Kirby v. Pennsylvania R. Co., 3 Cir., 188 F.2d 793, at page 795:

"All this comes a long way from being the neat, definite and precise findings of fact and conclusions of law from the pen of an experienced and conscientious trial judge made pursuant to the requirements of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

"Does it follow that a complaint based on such an award is too vague to be made the basis of an enforcement decree by a court? It is to be borne in mind that this Railroad Adjustment Board is not a lawyers' tribunal. It is a bipartisan board composed of railroad men selected, paid and serving at the will of their respective principals, management and railroad unions. Referees are called in only when the Board is deadlocked. The referees are, we understand, usually lawyers, but they are not permanent employees of the Board. The handling of claims by various divisions of the Railroad Adjustment Board is seldom if ever a matter of taking testimony on controversial facts. The proceedings are carried

from one step to another by persons familiar with both background and immediate controversy. When a referee is brought in, he is usually advised of the facts through the respective representatives of each side of the controversy. Everyone concerned knows what the dispute is, though disagreeing upon its settlement."

And further, at page 796:

"So we have this situation. The Congress has provided for the submission of certain railway labor disputes to a body which over the years has established its own method of operation in a way which gives each side a chance to have its problems heard and decided by persons who are thoroughly familiar with the industry and the kind of questions presented. The law-making body has thought well enough of the type of operation to provide for the enforcement of its results where necessary. But it has protected the party who lost before the Board from having unfair advantage taken of him by making the findings of the Board prima facie only. The loser must go forward with attacking proof; but the facts are not conclusively established by the findings. We think under these circumstances to insist upon the kind of definite requirement of findings of fact to which we are accustomed in the ordinary non-jury case would be doctrinaire and unrealistic. We think courts should take the findings of these divisions of the Railroad Adjustment Board as they come and do what they can with them."

And further, at page 799:

"However, we do not agree with the court below that the defense was properly made out in this case. In the first place the Supreme Court has said that the awards of the Board are clothed with a presumption of validity, and that the burden is on the one who would upset the award to show that it is invalid."

It, therefore, appears that in the opinion of this Circuit the Act is not a deprivation of a worker's constitutional right and the action of the Board, unless one attacking it would come forward and show, a lack of any evidence upon which the Board could act as it did, and that its actions were arbitrary or capricious and without sufficient explication in its findings for the parties to the dispute to understand why the Board did what it did, that the Board's decision is final. These are neither alleged nor shown in the record here presented.

The constitutionality of the Act has been approved not only indirectly as in the foregoing cases but directly in Parker v. Illinois Central Ry. Co., D.C., 108 F.Supp. 186, and in Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235. In the latter case Justice Rutledge for the Court of Appeals for the District of Columbia Circuit pointed out that Congress could vest authority or jurisdiction in the Board or the Court and had seen fit to vest it in the Board in the following language, 124 F.2d at page 250:

" * * * The present Act has evolved from a long legislative history. Many of its unique features are derived for that. Though the administrative features are frankly not in the accustomed traditions and methods of courts and lawyers, the enforcement suit follows them except possibly as to the initiative in litigation. That it may not do so in this single respect does not, as has been shown, deprive the carrier of legal protection according to due process of law.

"Nor does it that Congress may have intended to discourage resort to the courts for enforcement of awards and settlement of these disputes after the initial stages of private negotiation and administrative decision, thus securing the prompt disposition which the Act avowedly sought. If that was Congress' intent, its constitutional power over the jurisdiction of the federal court

sustains it both in providing the remedy which it has given and in excluding others."

It, therefore, appears that in an application by a railroad employee for reinstatement and for back pay that the National Railroad Adjustment Board has exclusive jurisdiction under and by virtue of the terms of the Railway Labor Act, supra. That the Act is constitutional and the only way an employee who loses before the Board can obtain a judicial review would be upon an allegation and showing that the action of the Board was either illegal or was not based upon any evidence and was, consequently, arbitrary and capricious, the same as a judicial review of any other administrative agency.

As a result of a failure to allege or show these things the action will be dismissed. Counsel will prepare an order.