**Thomas J. FINLIN, Charles H. Hogentogler and Darrell L. Middleton, Plaintiffs,**

v.

**PENNSYLVANIA RAILROAD COMPANY, Defendant.**

Civ. No. 431–57.

United States District Court
D. New Jersey.

Aug. 3, 1960.

Powell & Davis, by James M. Davis, Jr., Mt. Holly, N. J., John A. Matthews, Newark, N. J., of counsel, for plaintiff.

Archer, Greiner, Hunter & Read, by F. Morse Archer, Jr., Camden, N. J., for defendant.

MADDEN, District Judge.

On May 18, 1951, plaintiffs Finlin, Hogentogler and Middleton filed an amended complaint in this Court, in Civil Action 457–51, joining one Arthur F. Naylor as parties plaintiff. Naylor had previously filed a complaint on May 4, 1951 against the defendant, Pennsylvania Railroad Company, for an accounting and damages arising out of an alleged breach of a collective bargaining agreement. The claim concerned his operation of defendant's locomotives over track of other railroad companies. The plaintiffs also sought to restrain defendant from effecting a settlement of such claim with the brotherhood.

Thereafter, upon application by the defendant to dismiss, this Court held; Naylor v. Pennsylvania R. Co. et al., D.C. 1952, 106 F.Supp. 84, 86:

"This confirms our prior opinion, that the present suit, being one basically for the interpretation of an existing contract, which interpretation may affect the future relations of the parties, it should be heard by that expert body so established by Congress to deal with such problems, namely, the National Railway Adjustment Board."

Thereupon, the Court dismissed the action with leave to reopen if the National Railroad Adjustment Board did not dispose of the matter upon the merits. No appeal from that order was taken.

The present plaintiffs filed claims before the National Railroad Adjustment Board asserting the identical claims that formed the basis for their suit in this

Court. After hearing the National Railroad Adjustment Board denied the petitioners' claims.

Thereafter, on May 15, 1957, plaintiffs filed a complaint herein and by amended complaint filed June 20, 1957 seek a trial de novo of the matters heard by the board, asking this Court to set aside the order of the board as illegal, arbitrary and capricious and not based upon any substantial evidence.

Thereafter, the defendant, Pennsylvania Railroad Company, moved to dismiss upon the grounds that this Court lacked jurisdiction inasmuch as the exclusive authority over such disputes was in the board, and, secondly, if there is authority in the United States District Court to review the actions of the board, the board itself would be a necessary party.

In the meantime, a number of other suits had been commenced in this Court wherein the jurisdiction of the National Railroad Adjustment Board and the exclusiveness of its jurisdiction was questioned. Barnett v. Pennsylvania-Reading Seashore Lines, D.C.1955, 145 F. Supp. 731; Stranford v. Pennsylvania R. Co., D.C.1956, 155 F.Supp. 680; and Day v. Pennsylvania R. Co., D.C.1955, 155 F. Supp. 695.

In the Barnett matter this Court filed an opinion September 19, 1956 (145 F. Supp. 731) denying to petitioner jurisdiction in this Court in a suit seeking reinstatement in his employment and back pay. This Court held the National Railroad Adjustment Board had primary and exclusive jurisdiction. This holding was affirmed by the Court of Appeals in an opinion by Judge Goodrich, 3 Cir., 1957, 245 F.2d 579.

On September 5, 1957, in separate opinions, this Court dismissed the complaints in Stranford v. Pennsylvania R. Co., 1957, 155 F.Supp. 680 and Day v. Pennsylvania R. Co., 1957, 155 F.Supp. 695. The Stranford decision was not appealed but Day v. Pennsylvania R. Co. was.

In the Day v. Pennsylvania R. Co. matter this Court had before it at the time of its consideration the findings of the National Railroad Adjustment Board in the three hearings that are presently before the Court. This Court held that inasmuch as those findings involved the very same question as that involved in the Day matter they, therefore, could be used for consideration in the Day matter.

Inasmuch as the Day matter was before the Court of Appeals, the parties hereto continued the motion to dismiss in this case pending decision by the Court of Appeals.

On August 12, 1958, the Court of Appeals for the Third Circuit, in an opinion by Judge Kalodner, 258 F.2d 62, reversed the action of this Court and held that inasmuch as DePriest, the decedent employee, had entered retirement he was not to be considered an employee under the terms of the Railway Labor Act,[1] and, further, that the District Court did have jurisdiction to entertain the suit for damages under the collective bargaining agreement.

On June 29, 1959, the Supreme Court, in a six to three decision, reversed the Court of Appeals and upheld the dismissal of the complaint by this Court in an opinion by Mr. Justice Frankfurter, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422, with a dissent by Mr. Justice Black. After receipt of the mandate this matter was then argued to this Court and the following questions presented: Does this Court have jurisdiction to review actions of the National Railroad Adjustment Board and in effect grant a trial de novo and reach a decision on the facts different from the decision of that body? Secondly, assuming arguendo that the Court has jurisdiction to review the actions of the National Railroad Adjustment Board where there is an alleged denial of procedural due process, would the board be a necessary party to the action?

This Court must recognize and keep in mind that the Court of Appeals and

1. 45 U.S.C.A. § 151 et seq.

the Supreme Court all had before them for consideration in Day v. Pennsylvania R. Co. the very findings of the board which are the basis for the plaintiffs' claims in this case.

Concerning the first question, legal research brings to light a number of cases where the courts have hinted that in certain instances judicial review of the board's actions is possible. For example, footnote No. 7 in Mr. Justice Black's dissent in Pennsylvania R. Co. v. Day, 360 U.S. 548, 558, 79 S.Ct. 1322, 1328:

" * * * courts have intimated, however, that review of Board rulings adverse to the employee is permissible to the extent of insuring that the employee was not deprived of procedural rights protected by due process. Ellerd v. Southern Pacific R. Co., [7 Cir.], 241 F.2d 541; Barnett v. Pennsylvania-Reading Seashore Lines [3 Cir.], 245 F.2d 579."

Mr. Justice Brennan, speaking for the majority in Union Pacific R. Co. v. Price, 360 U.S. 601, at page 616, 79 S.Ct. 1351, 1359, 3 L.Ed.2d 1460, seems to indicate the possibility of judicial review where the board denies petitioner due process of law:

"This grist of labor relations is such that the statutory scheme cannot realistically be squared with the contention that Congress did not purpose to foreclose litigation in the courts over grievances submitted to and disposed of by the Board, past the action under § 3 First (p) authorized against the noncomplying carrier, see Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, affirmed by an equally divided court, 319 U.S. 732 [63 S.Ct. 1430, 87 L.Ed. 1694], *or the review sought of an award claimed to result from a denial of due process of law, see Ellerd v. Southern Pacific R. Co. [7 Cir.], 241 F.2d 541; Barnett v. Pennsylvania-Reading Seashore Lines, [3 Cir.], 245 F.2d 579, 582."* (Emphasis supplied.)

For other cases on point see footnote No. 2 of Judge Goodrich's opinion in Barnett v. Pennsylvania-Reading Seashore Lines, 3 Cir., 245 F.2d 579, at page 582.

However, there is no one case that this Court can find that enables a United States District Court to grant the relief asked for by the plaintiffs in this case (trial de novo of a claim presented and denied by the Railroad Adjustment Board). To the contrary, when this exact issue was presented to the United States District Court, Northern District of Illinois, in Rossa v. Flying Tiger Line, Inc., 187 F.Supp. 386, 392, in a suit by an airline pilot for damages for alleged wrongful discharge seeking to avoid the final and binding effect of the System Board decision by asserting that he was not accorded a fair hearing. The court there said:

" * * * that regardless of the collateral nature of the attack upon the board's decision in a suit for damages, it is without jurisdiction to review the board's determination on the basis of the allegations on the pleadings. The decision of the System Board of Adjustment is not open to judicial review on questions of either law or fact. * * * Plaintiff's allegations concerning the board's proceedings are not such as to warrant or afford jurisdiction to review what the System Board did. * * * Count II of plaintiff's complaint in which he charges deprivation of property without due process of law does not state a claim against defendant, Flying Tiger."

This Court is unable to find any direct authority for granting jurisdiction to District Courts to hear a case which challenges the decision reached by the board. This is true whether plaintiff was seeking a trial de novo on the merits or seeking a review because of alleged denial of procedural due process.

█ As to the jurisdiction to grant a trial de novo on the merits, the Supreme Court has spoken directly on point. Mr. Justice Brennan, in Union Pacific R. Co.

v. Price, 1959, 360 U.S. 601, 79 S.Ct. 1351, held that after a hearing by the board and a denial of his claim, an employee was not entitled to relitigate issues decided by the board. In that opinion Mr. Justice Brennan said, 360 U.S. at page 614, 79 S.Ct. at page 1358:

"Despite the conclusion compelled by the over-all scheme of the Railway Labor Act and its legislative history, it is suggested that because an enforcement proceeding against a noncomplying carrier under § 3 First (p) affords the defeated carrier some opportunity to relitigate the issues decided by the Adjustment Board, unfairness results if § 3 First (m) is construed so as to deny the employee the right to maintain this common-law action. We are referred to the emphasis upon the consideration of avoiding unfairness expressed in United States v. Interstate Commerce Comm., 337 U.S. 426 [69 S.Ct. 1410, 93 L.Ed. 1451], which held that a denial by the Interstate Commerce Commission of a claim of a shipper for money reparations is reviewable in the federal courts, pointing out that a Commission award favorable to a shipper was not final and binding upon the railroad. But that holding rested upon an interpretation of 28 U.S.C. (1946 ed.) § 41(28) providing that 'The district courts shall have original jurisdiction * *· * of cases brought to enjoin, set aside, annul, or suspend in whole or in part *any* order of the Interstate Commerce Commission.' (Italics supplied.) In contrast, § 3 First (m) here involved commands that the Adjustment Board's 'awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award.' The Adjustment Board's award in controversy denied respondent's claim for reinstatement and back pay, which, we have said, was not a 'money award.' Although the provisions for enforcement of money awards in the Railway Labor Act, § 3 First (*o*) and (p), establish procedures similar to those under 49 U.S.C. § 16(1) and (2), 49 U.S.C.A. § 16(1, 2), for enforcement of reparations orders of the Interstate Commerce Commission, § 3 First (m) with which we are here concerned has no counterpart in the Interstate Commerce Act. *The disparity in judicial review of Adjustment Board orders, if it can be said to be unfair at all, was explicitly created by Congress, and it is for Congress to say whether it ought be removed.*" (Emphasis supplied.)

On the same day as the Price decision, supra, the Supreme Court decided Pennsylvania R. Co. v. Day, in a six to three decision, wherein the Court in an opinion by Mr. Justice Frankfurter said, 360 U.S. at page 552, 79 S.Ct. at page 1325:

"Since the Board has jurisdiction, it must have exclusive primary jurisdiction. All the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired and seeks compensation for work performed while he remained on active service. A contrary conclusion would create a not insubstantial class of preferred claimants. Retired employees would be allowed to bypass the Board specially constituted for hearing railroad disputes whenever they deemed it advantageous to do so, whereas all other employees would be required to present their claims to the Board. This case forcefully illustrates the difficulties of such a construction. Several active workers have had claims similar to that of respondent rejected by the Board. To allow respondent now to try his claim in the District Court would only accentuate the danger of inequality of treatment and its consequent discontent which it was the

aim of the Railway Labor Act to eliminate. We can take judicial notice of the fact that provisions in railroad collective bargaining agreements are of a specialized technical nature calling for specialized technical knowledge in ascertaining their meaning and application. Wholly apart from the adaptability of judges and juries to make such determinations, varying jury verdicts would imbed into such judgments varying constructions not subject to review to secure uniformity. Not only would this engender diversity of proceedings but diversity through judicial construction and through the construction of the Adjustment Board. Since nothing is a greater spur to conflicts, and eventually conflicts resulting in strikes, than different pay for the same work or unfair differentials, not to respect the centralized determination of these questions through the Adjustment Board would hamper if not defeat the central purpose of the Railway Labor Act."

In the language of these two cases this Court feels the Supreme Court made it clear that there is no authority to entertain jurisdiction of this suit. Likewise, where Mr. Justice Brennan in the Price decision made the analogy to judicial review of the Interstate Commerce Commission's ruling, it seems implicit that the commission itself be a necessary party. See 49 U.S.C.A. § 16 et seq.

▮ It, therefore, seems clear that this Court has no jurisdiction of the present matter. If any District Court would be held to have jurisdiction because of petitioner's alleged denial of due process, it seems implicit that the National Railroad Adjustment Board be made a party to the action. For when the actions of the National Railroad Adjustment Board are assailed as illegal, arbitrary and capricious and not founded upon substantial evidence and review thereof sought to the end that their action might be modified or reversed that such board is a necessary party to the proceeding. See Stranford v. Pennsylvania R. Co., 155 F.Supp. 680, at page 690:

"This would seem to be so under the ruling of the Supreme Court in Blackmar v. Guerre, 1952, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534. There, a discharged employee of the Veterans Administration in New Orleans appealed to the regional office of the Civil Service Commission located in New Orleans. He won and was ordered reinstated. The Veterans Administration appealed to the Board of Appeals and Review located in Washington, D. C. The Board reversed the regional office. The employee then instituted suit in United States District Court in Eastern District of Louisiana. In holding that the United States Civil Service Commission was an indispensable party and dismissing the action the court, through Mr. Justice Minton, said (342 U.S. at page 514, 72 S.Ct. at page 411):

" 'If the Commission could be sued eo nomine, we would be confronted with the question of whether service as here made would be sufficient to bring the Commission into court; but Congress has not constituted the Commission a body corporate or authorized it to be sued eo nomine.'

"And further (342 U.S. at page 515, 72 S.Ct. at page 412):

" 'Since the Civil Service Commission is not a corporate entity which Congress has authorized to be sued, a suit involving the action of the Commission generally must be brought against the individual Commissioners as members of the United States Civil Service Commission. No such suit was brought here, and no service was had upon the individuals comprising the Civil Service Commission. Therefore, neither the individuals comprising the Civil Service Commission nor the Commission as a suable entity was before the District Court.' "

This Court cannot find any method within its jurisdiction to gain service upon such a board.

For the foregoing reasons the complaint will be dismissed.

Counsel will prepare an appropriate order.